**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**DAVID C.,**

                **Plaintiff,**

-vs-                                              **Case No. 6:11-cv-1402-Orl-31KRS**

**JOHN E.,**

                **Defendant.**

## ORDER

This matter comes before the Court on the Motion to Dismiss Amended Complaint (Doc. 27) filed by the Defendant, John E., and the Response in Opposition (Doc. 30) filed by the Plaintiff, David C.

**I.    Background**

According to the allegations of the Amended Complaint (Doc. 22), which are accepted as true for purposes of this motion to dismiss, the Plaintiff's wife gave birth in December 2010 to a daughter, K.M.C. On June 25, 2011, the Plaintiff's wife informed him that she had been having an affair with the Defendant, and that the Defendant might be the biological father of K.M.C. (Doc. 22 at 11). Five days later, the Plaintiff filed a dissolution action in state court. (Doc. 22 at 11). In July 2011, Plaintiff's counsel received a letter from Defendant's counsel contending that Defendant was K.M.C.'s biological father and stating that he wanted to become actively involved in her life. (Doc. 22 at 13).

On August 22, 2011, the Plaintiff instituted this suit. (Doc. 1). Approximately an hour after he filed this suit in federal court, the Plaintiff filed a suit in state court against the Defendant. (Doc. 18 at 2 n. 1). According to the Plaintiff, his state court suit raises only state law issues relating to the disputed paternity of K.M.C. On November 18, 2011, the Plaintiff's state court paternity action was consolidated with the dissolution action he filed against his wife.

The Defendant filed a multi-count counterclaim in the state court suit. In Count I of that counterclaim, the Defendant sought a declaratory judgment to establish paternity pursuant to Fla. Stat. § 742.011, which provides that

> Any woman who is pregnant or has a child, any man who has reason to believe that he is the father of a child, or any child may bring proceedings in the circuit court, in chancery, to determine the paternity of the child when paternity has not been established by law or otherwise.

In Count III of his counterclaim, the Defendant asserted that, to the extent Fla. Stat. § 742.011 might be applied so as to preclude him from seeking a determination of paternity, it would violate the Fifth and Fourteenth Amendments to the United States Constitution.[1] (Doc. 22-8 at 11).

On February 24, 2012, the state court dismissed Count I of the counterclaim, finding that the Defendant could not proceed under Fla. Stat. § 742.011. The state court also stayed Count III of the counterclaim in favor of the instant action, subject to the stay being lifted if this matter is dismissed. Subsequently, the Defendant sought leave to file an amended counterclaim, which would include claims similar to the one that was dismissed, but the record does not reflect that the Defendant's motion has been ruled upon by the state court judge.

---

[1] In Count II of the counterclaim, the Defendant asserted a similar argument to the one he raised in Count III; however it was based on the Florida Constitution rather than the United States Constitution.

In his original complaint in this case (Doc. 1), the Plaintiff contended that the Court possessed federal question jurisdiction over the dispute. (Doc. 1 at 2). In that complaint, he sought two things: first, a declaration that,

> to the extent Florida law preclude [sic] Defendant from challenging the legitimacy and paternity of K.M.C., Defendant does not have any superior right under the Constitution or laws of the United States to challenge paternity or otherwise determine parentage of K.M.C.

(Doc. 1 at 15). Second, the Plaintiff sought to enjoin the Defendant "from challenging, under the Constitution or laws of the United States, the legitimacy or paternity of K.M.C. in the courts of any state." (Doc. 1 at 15).

The Defendant sought dismissal of this suit. The Court found that the suit was an effort to use the Declaratory Judgment Act to preemptively raise a defense. (Doc. 19 at 3). Accordingly, the issue for jurisdictional purposes was not whether the Plaintiff had raised a federal question in his complaint but whether a federal court would have had jurisdiction over the claim the Plaintiff was attempting to defend against if that claim had been filed in federal court.[2] Determining that the Defendant's "action" would have been a parental rights/child custody case, the Court found that the domestic relations exception[3] would preclude any exercise of jurisdiction if the action had

---

[2]*See Public Service Commission of Utah v. Wycoff Co., Inc.*, 344 U.S. 237, 242 (1952) ("Where the complaint in an action for declaratory judgment seeks in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court.").

[3]The domestic relations exception divests the federal courts of the authority to issue divorce, alimony, and child custody decrees. *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992). The exception is premised on the fact that domestic relations disputes have traditionally been left to the state courts, which have more experience in divorce, alimony, and child custody matters and are more closely associated with the state and local government organizations dedicated to handling

been filed in federal court. (Doc. 19 at 3-4). Accordingly, the Court found that it lacked jurisdiction over the Plaintiff's complaint and dismissed it, giving the Plaintiff leave to refile.

The Plaintiff filed an amended complaint (Doc. 22) on December 2, 2011. It resembles, in large part, his original complaint. In it, he seeks (1) a declaration that Fla. Stat. § 742.011 does not violate the Fifth or Fourteenth Amendments to the United States Constitution; (2) a declaration that, to the extent the Florida Constitution permits Defendant to establish parental rights in regard to K.M.C., it would violate Plaintiff's rights under the Fifth and Fourteenth Amendments to the United States Constitution; and, (3) an injunction to prevent Defendant from challenging, under the Constitution or laws of the United States, the legitimacy or paternity of K.M.C. in the courts of any state. (Doc. 22) at 17). The Defendant has moved to dismiss the amended complaint for lack of subject matter jurisdiction and, in the alternative, seeks to have the Court decline to exercise jurisdiction over the action.

## II. Standards

Actions for declaratory judgments represent a comparatively recent development in American jurisprudence. The traditional and conventional concept of the judicial process has been that the courts may act only when a complainant is entitled to a coercive remedy, such as a judgment for damages or an injunction. Until a controversy had matured to a point at which such relief was appropriate and the person entitled thereto sought to invoke it, the courts were powerless to act.

Actions for declaratory judgment are a comparatively new development in American courts. *See generally* 10B Wright, Miller & Kane, *Federal Practice and Procedure* § 2751 (1998 ed.). Traditionally, courts could not act until the complaining party (1) was entitled to a coercive remedy, such as a judgment for damages or an injunction, and (2) opted to seek that remedy. In

---

such issues. *Id.* at 703-04.

some cases, this created an undue hardship – for example, where a contracting party was unsure whether a particular provision was binding, or where a manufacturer had been told that its new product would infringe a patent. Under the traditional scheme, these parties could only obtain judicial relief by provoking a suit for breach of contract or patent infringement.

To rectify this problem, Congress implemented the Declaratory Judgment Act, 28 U.S.C. § 2201, which provides in relevant part that

> In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201.

The Declaratory Judgment Act allows rights and obligations to be adjudicated in cases that have not reached the stage at which either party may seek a coercive remedy and in cases in which a party who could sue for coercive relief has not yet done so. The remedy it provides is intended to "minimize the danger of avoidable loss and the unnecessary accrual of damages and to afford one threatened with liability an early adjudication without waiting until an adversary should see fit to begin an action after the damage has accrued." 10B Wright, Miller & Kane, *Federal Practice and Procedure* § 2751 (1998 ed.).

The Declaratory Judgment Act is "an enabling Act, which confers a discretion on courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287, 115 S.Ct. 2137, 2143, 132 L.Ed.2d 214 (1995). It only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so. *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 494, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942).

**III.     Analysis**

The Plaintiff argues that the Court misinterpreted his original complaint. Where the Court found that he was attempting to defend against any assertion of paternity by the Defendant, he contends that he was simply arguing that the Florida paternity statute did not violate the United States Constitution. (Doc. 30 at 5). As such, the claim against which he was defending was not Defendant's entire parental rights/child custody case, but simply Defendant's assertion that the Florida paternity statute violated the United States Constitution.[4]

However, even accepting the Plaintiff's construction of the case, it is obvious that this is not a proper situation for declaratory relief, for several reasons  First, it is still not clear that the Court possesses subject matter jurisdiction over this matter. The instant dispute over the constitutionality of Fla. Stat. § 742.011 is derivative of the Defendant's state court action to determine paternity (which was filed as a mandatory counterclaim to the Plaintiff's state court action). The Defendant could not have filed his paternity action in federal court, and in the absence of the paternity action, he would not have possessed standing to file a constitutional challenge to the Florida statute in federal court.

---

[4]However, the Plaintiff's goal was at best ambiguous. He did not seek a declaration along the lines of what he now contends was his argument – *e.g.*, a declaration that Fla. Stat. § 742.011 did not violate the Fifth or Fourteenth Amendment. Rather, the Plaintiff sought two things: a declaration that the Defendant "does not have any superior right under the Constitution or laws of the United States to challenge paternity or otherwise determine parentage of K.M.C." (Doc. 1 at 15). And an injunction that would prevent the Defendant from challenging "the legitimacy or parentage of K.M.C. in the courts of any state". (Doc. 1 at 15). Moreover, the first paragraph of the complaint describes the case as "an action [to] prevent Defendant from impugning the legitimacy of Plaintiff's child ("K.M.C.")" (Doc. 1 at 1) as opposed to, for example, an action to establish the legitimacy of Fla. Stat. § 742.011.

Even assuming jurisdiction exists, however, the instant case was clearly filed in anticipation of the Defendant's counterclaim in state court. Indeed, the only asserted basis for filing this suit is to answer a question that the Plaintiff expected would be asked in the other action. In its discretion, a district court may decline to entertain a declaratory judgment when a pending proceeding in another court will fully resolve the controversy between the parties. *Ven-Fuel, Inc. v. Dep't of the Treasury*, 673 F.2d 1194, 1195 (11th Cir. 1982). *See also Hollis v. Itawamba County Loans*, 657 F.2d 746 (5th Cir. September 30, 1981)[5] (holding that "whether there is a pending procedure in state court in which matters in controversy between the parties may be fully litigated" is one factor the court may consider in determining whether to hear declaratory action). At most, the instant case will decide only a tiny fraction of the issues in dispute between these parties, whereas the state court is in a position to resolve all of the parties' disputes.

And the instant scenario in no way resembles the situation that declaratory judgments were intended to address.

> The remedy made available by the Declaratory Judgment Act and Rule 57 is intended to minimize the danger of avoidable loss and the unnecessary accrual of damages and to afford one threatened with liability an early adjudication without waiting until an adversary should see fit to begin an action after the damage has accrued. It relieves potential defendants "from the Damoclean threat of impending litigation which a harassing adversary might brandish, while initiating suit at his leisure – or never. It permits actual controversies to be settled before they ripen into violations of law or a breach of contractual duty and it helps avoid a multiplicity of actions by affording an adequate, expedient, and inexpensive means for declaring in one action the rights and obligations of litigants.

---

[5] All decisions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent on courts within the Eleventh Circuit. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981).

10B Wright, Miller & Kane, *Federal Practice and Procedure* § 2751 (1998 ed.).  This case cannot accomplish any of these purposes.  Unlike the contracting party who is unsure about whether his planned action would constitute a breach, or the manufacturer who cannot determine whether his new product infringes a competitor's patent, the Plaintiff in this case was not threatened by avoidable loss or unnecessary damages as a result of his inability to determine the constitutionality of Florida's paternity statute.  Answering the question as to whether Fla. Stat. § 742.011 is constitutional will not be determinative of the fundamental dispute between these parties.  And rather than avoiding a multiplicity of actions, in this case the Declaratory Judgment Act contributes to that multiplicity.  Indeed, it is obvious to the Court that the primary if not sole reason for the institution of this suit was to give the Plaintiff a second bite at the apple, allowing him a chance to either prevail on the merits in state court or on constitutional grounds here.  As this suit is not at all the sort of situation the Declaratory Judgment Act was intended to address, to

the extent that this Court possesses jurisdiction over this dispute, it will decline to exercise it.

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion to Dismiss Amended Complaint (Doc. 27) is hereby **GRANTED**, and this case is **DISMISSED WITHOUT PREJUDICE**.[6]  The Clerk is directed to close the file.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on March 27, 2012.

**GREGORY A. PRESNELL**
**UNITED STATES DISTRICT JUDGE**

Copies furnished to:

Counsel of Record
Unrepresented Party

---

[6] Although this is not a decision on the merits, no further amendments will be permitted.